## THE CRASTER HALL.

(District Court, E. D. Georgia, S. D.   February 25, 1913.)

SALVAGE (§ 30*)—RESCUE OF STRANDED STEAMSHIP—COMPENSATION.

Tugs of the aggregate value of $155,000, which after three days' effort rescued a steamship valued with her cargo at $500,000, which was stranded on the Atlantic coast and lying in a position of great danger, without injury to vessel or cargo, *held* to have performed a highly meritorious salvage service, and to be entitled to an award of 5 per cent. of the salved value.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 72–74; Dec. Dig. § 30.*]

In Admiralty.   Suit for salvage by the Propeller Towboat Company and others against the steamship Craster Hall and cargo.   Decree for libelants.

Garrard & Gazan and A. Minis, all of Savannah, Ga., for libelants.
Convers & Kirlin, and Chas. R. Hickox, all of New York City, for claimants.

SPEER, District Judge (orally).   The Craster Hall was a very fine steamer, which left port on the west shore of South America and voyaged to Savannah.   When close to Tybee Light, in the daytime, she was steered up upon a dangerous shoal.   Whether she went ashore at one point or another, it matters not.   According to the testimony of her own people, she went ashore at six or seven knots an hour.   According to the testimony of others, her speed was faster, and her grounding therefore harder and more immovable. She had a cargo of more than 6,000 tons of nitrate of soda.   Efforts were immediately made by a powerful tug in sight, which went immediately to her relief, to pull her off.   It was not possible to move her. Her head thereafter was slued around until she was lying a little east of south and in a more favorable position.   Continued efforts were made by successive tugs to move her for the greater portion, or for portions, of three days and nights.   During a considerable part of this time she was pounding.   For a while she was pounding heavily.   Now, with the long experience the court has had with this coast and the dangers of its navigation, we are very clear that this fine vessel was in a highly hazardous situation.   Twenty-four hours, or half of 24 hours, 2 hours even, might have made it impossible to extricate her from that position with all the power which could have been exerted, and hers would have been the fate of the melancholy list of ships which have gone ashore on those treacherous sands, known not as the learned proctors for libelant would term it, "the Norwegian Graveyard," but "the Graveyard of the Atlantic."

Finally, after three days' effort, she was, by the efforts of all the available tugs, so far as the evidence discloses, hauled off the bank, and gotten off without any injury whatever.   The service was most handsomely performed.   Her cargo, nitrate of soda, which could have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been easily destroyed by water, being highly soluble, was all saved. While she was aground, the wind was from the northwest. This was most favorable. She was relieved in the very nick of time. Next day the wind changed to the east, and the Atlantic rollers, with nothing to impede them between Tybee sands and the coast of Morocco, would have soon made sad work of the Craster Hall. A day later it is quite doubtful that she would have gotten off at all. The values salved are a little more than $497,000. That is agreed on. It is practically undisputed that $155,000 worth of tugs were utilized in her salvage. The services rendered were meritorious, though not the highest class of salvage. There was actually no great danger incurred. But with such conditions the gravest danger to the tug is ever possible. The risk is an actuality. I consider the service meritorious, and in view of the promptitude and skill in which it was rendered, I regard it as highly meritorious, such salvage as courts ought to reward. It is such salvage as shipowners ought to be willing to pay. Here, at this prosperous harbor, where there is much shipping, these fine tugs are essential to the commerce of the world. Their presence here has results both humane and benevolent, though they are doubtless designed in larger measure for pecuniary profit. True, the chief factor in the calculation of salvage here was the eminent hazard to quite a half million of dollars invested in the Craster Hall, hard aground on unstable sands, and exposed to the full force of the winds and the waves of the Atlantic.

My judgment in this case, which I fear will not be satisfactory to either litigant, is that a reasonable allowance of salvage would be 5 per cent. of the value of the ship and cargo saved, with costs, and that a decree for this amount should be entered.